# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RUSSELL H. CULLEN,

              *Plaintiff*,

    v.

DEPARTMENT OF HOMELAND SECURITY
et al.,

              *Defendants*.

Civil Action No. 20-113 (TJK)

## MEMORANDUM OPINION

After his conviction on charges related to child pornography, Plaintiff filed two Freedom of Information Act requests seeking records about his criminal case. The defendant agencies produced some records to him but withheld other material subject to several exemptions. Proceeding pro se, Plaintiff brought this case seeking to compel more disclosure. Both sides now move for summary judgment—Plaintiff by contesting the propriety of a small subset of those withholdings, and Defendants by supporting the same. Defendants have met their burden to justify the withholdings, so the Court will grant summary judgment in their favor.

## I.    Background

A federal jury convicted Plaintiff of possessing and distributing child pornography. *See generally United States v. Cullen*, 796 F. App'x 976, 977–78 (11th Cir. 2019). Homeland Security Investigations ("HSI"), an agency within the Department of Homeland Security ("DHS"), investigated the offenses with which he was charged. *See* ECF No. 53-2 ¶ 17. The U.S. Attorney's Office for the Southern District of Florida, housed within the Department of Justice ("DOJ"), prosecuted Plaintiff. *See* ECF No. 53-5 ¶¶ 6–7.

From prison, Plaintiff submitted two identical Freedom of Information Act ("FOIA") requests in 2018, one to DHS and the other to DOJ. *See* ECF No. 18 ¶¶ 4–8. The requests suggested that Plaintiff sought documents related to his criminal case. He requested:

> (1) Arrest reports; (2) Investigatory reports, including hand-written notes and final drafts; (3) Reports of evidentiary, scientific, and regulatory information, findings and conclusion; (4) Plea agreements of codefendant; (5) Charging documents; (6) Classification of the 'Charged Offense"; (7) Video tapes; (8) Telephonic recording/transcripts; (9) Computer disks; (10) Computerized notepad disks; (11) Photographs; (12) Completed and submitted forms . . . and reports; and (13) all other information, data, and reports not listed above and otherwise not exempted by law.

ECF No. 53-2 at 16–17; ECF No. 53-4 at 17–18.

DHS treated that request as seeking information about "investigative activity by HSI that led to Plaintiff's prosecution." ECF No. 53-2 ¶ 17. Thus, an HSI representative searched that agency's systems for "terms including the name of the plaintiff, the plaintiff's spouse, date of birth, social security number and the title of the [criminal] case." *Id.* ¶ 19. The agent's search uncovered responsive records, which a DHS FOIA office processed. *See id.* ¶¶ 20–30.

The parties dispute when DHS sent, and when Plaintiff received, its productions. But at latest, by 2022, DHS had sent Plaintiff two productions. One contained 175 pages of records (14 pages produced in full and 161 pages produced in part), ECF No. 53-2 ¶¶ 20–24; and one contained 440 pages of records (154 pages produced in full and 286 pages produced in part), *id.* ¶¶ 20, 28–30.

DOJ directed staff at the U.S. Attorney's Office for the Southern District of Florida to search for its responsive records. ECF No. 53-4 ¶ 7. That office found responsive records and sent them to a DOJ FOIA office for processing. *See id.* ¶ 18. DOJ initially produced documents to Plaintiff in 2020. *See id.* ¶ 10. While this case was pending, it supplemented that production a few times, including by reprocessing prior withholdings. *See id.* ¶¶ 11–13.

DOJ also located two "discs" that it believed had originated from HSI. ECF No. 53-4 ¶ 9.

DOJ believed the discs might contain child pornography.  *Id.* ¶¶ 19–20.  It sent the discs to HSI

for processing.  *Id.*; ECF No. 53-2 ¶ 25.  At first HSI's FOIA office concluded they "could not be

processed due to the explicit content on the discs."  ECF No. 53-2 ¶ 25.  Later, DHS directed an

HSI agent to enable processing by "segregating any non-explicit material from the explicit mate-

rial."  *Id.* ¶ 26.  The agent did so, and DHS processed the result.  *See id.* ¶ 27.  DHS produced the

processable material to Plaintiff and withheld the segregated, non-processable material.  *See id.*

     Meanwhile, Plaintiff filed this case against DHS.  *See* ECF No. 1.  The Court later permit-

ted Plaintiff to amend his complaint to add DOJ as a defendant.  *See* Min. Order of Apr. 27, 2020;

ECF No. 13.  The operative complaint asserts claims under FOIA, the Privacy Act of 1974, and

the Administrative Procedure Act ("APA").  *See id.* at 1.

     After Defendants answered that complaint, ECF Nos. 15, 23, the parties negotiated pro-

cessing and production for some time.  *See generally* ECF Nos. 24–46.  Eventually, Defendants

represented to the Court that they had completed processing.  *See* ECF No. 45 at 5.  Thus, the

Court set a briefing schedule for summary-judgment motions.  *See* Min. Order of Jan. 19, 2022.

After that representation, however, Defendants supplemented their prior productions.  *See* ECF

No. 53-2 ¶¶ 28–30; ECF No. 53-4 ¶¶ 11–13.

     Both sides now move for summary judgment.  Defendants say they have adequately

searched for responsive records, their withholdings are supported by correctly asserted exemptions

from disclosure, and they reasonably segregated nonexempt material from exempt material.  ECF

No. 53 at 12–24.  Plaintiff disputes whether two types of records are exempted, and as for one

type, whether Defendants have met their obligation to segregate nonexempt from exempt material.

ECF No. 55 at 2–6.  Plaintiff notes he has "singled out just a few documents" from Defendants'

overall withholdings for challenge.  *See id.* at 6 (emphasis omitted).

## II.     Legal Standard

A movant proves entitlement to summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A dispute is not genuine if insufficient evidence supports one of its sides.  *See Eddington v. U.S. Dep't of Defense*, 35 F.4th 833, 836–37 (D.C. Cir. 2022).  A movant negates a genuine dispute by demonstrating the inadequacy of the nonmoving party's evidence on that point.  *See Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015).  A dispute is material if it matters under the governing law.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  So a movant negates a material dispute by demonstrating that the point is "irrelevant or unnecessary" to resolving the legal issues.  *See Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quotation omitted).  Applying both those principles, a court should enter summary judgment for a movant if no reasonable jury could find for the nonmovant based on the evidence construed in the light most favorable to the nonmovant.  *See Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A).  If the agency invokes one of those exemptions, it "bears the burden of demonstrating [that it] applies." *Schaerr v. DOJ*, 69 F.4th 924 (D.C. Cir. 2023).  To satisfy that burden, the agency can: (1) produce a *Vaughn* index,[1] and (2) produce corresponding "affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail." *Waterman v. IRS*, 61 F.4th

---

[1] A *Vaughn* index "correlates all withholdings with specific FOIA exemptions and the agency's specific nondisclosure justifications." *Pub. Citizen v. HHS*, 66 F. Supp. 3d 196, 200 n.2 (D.D.C.2014) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C.Cir.1973)).

152, 158 (D.C. Cir. 2023) (quotation omitted).  The agency is entitled to summary judgment if the *Vaughn* index and affidavits "show, with reasonable specificity, why the [requested] documents fall within the exemption."  *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quotation omitted).

Because Plaintiff proceeds pro se, the Court must construe his filings liberally.  *See Cunningham v. DOJ*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014).  But ultimately, pro se plaintiffs face the same summary-judgment standard as other litigants, and so they must "respond[ ] to a motion for summary judgment with evidence sufficient to show that the case raises a triable issue of fact." *Husain v. Power*, 630 F. Supp. 3d 188, 200 (D.D.C. 2022).  That is, Plaintiff is subject to "the same evidentiary burdens and presumptions as represented plaintiffs."  *Penkoski v. Bowser*, 548 F. Supp. 3d 12, 20 (D.D.C. 2021).

## III.    Analysis

### A.    Defendants are Entitled to Summary Judgment on Plaintiff's FOIA Claims

#### 1.    The Court Considers Only the Arguments Plaintiff Asserts

Plaintiff's cross-motion for summary judgment acknowledges that Defendants have not produced many documents conceivably within the scope of his request.  That includes documents they have located but withheld—"many thousands," by Plaintiff's characterization.  *See* ECF No. 55 at 6 (emphasis omitted).  Yet he "has singled out just a few documents" for which he challenges the government's nonproduction.  *See id.* (emphasis omitted).  By so limiting the scope of his summary-judgment arguments, Plaintiff has waived any entitlement to the Court's further review.[2]   Generally, to preserve a summary-judgment argument, a party must assert it in its

---

[2] The Court uses the term "waiver" and not "forfeiture" because Plaintiff's motion makes clear that his decisions to challenge only some of Defendants' withholdings and not to challenge the adequacy of its searches were intentional.  "[F]orfeiture is the failure to make the timely

opening brief.  *See Shapiro v. DOJ*, 239 F. Supp. 3d 100, 120 (D.D.C. 2017).  So if a FOIA plaintiff's opening brief does not contest the adequacy of the search, courts routinely disregard that issue.  *See, e.g.*, *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 24 n.5 (D.D.C. 2019).  Similarly, courts do not address the propriety of withholdings the plaintiff does not contest.  *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 281 n.3 (D.D.C. 2016).[3]  This Court will do the same.

## 2.  Defendants Have Justified the Contested Withholdings

Plaintiff challenges two sets of withholdings.  The first consists of withheld "DVDs" and "hard copies" of "computer forensic[ ] reports."  ECF No. 53-2 at 30–33 (*Vaughn* index); *see also* ECF No. 55 at 2–3, 5–6.  The second includes "a printout of child erotica sites" and "screenshots of the HSI Child Protection System."  ECF No. 53-2 at 37–39 (*Vaughn* index); *see also* ECF No. 55 at 4–5.  In response to Plaintiff's arguments about the second set of withholdings, Defendants produced more material.  *See* ECF No. 58 at 4; ECF No. 58-1 ¶¶ 6–8.  Thus, what now remains of the second set of withholdings is a "list of file names," *see* ECF No. 58-1 ¶ 8.

The Court has reviewed Defendants' *Vaughn* index and the affidavits they submitted to explain the withholdings.  As explained further below, those documents show with reasonable specificity why at least one FOIA exemption applies to the remaining withholdings.  *See Evans*, 951 F.3d at 583.  So the Court will grant summary judgment to Defendants.

---

assertion of a right, [and] waiver is the intentional relinquishment or abandonment of a known right."  *Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 343 n.2 (D.C. Cir. 1997) (quotation omitted).  Plaintiff expressly challenges only some of Defendants' withholdings as erroneous.  *See* ECF No. 55 at 6–7; *see also* ECF No. 60 at 6.

[3] Although courts may overlook even an intentional waiver if justice so requires, *see generally Am. Ctr. for L. and Just. v. DOJ*, 325 F. Supp. 3d 162, 169 (D.D.C. 2018), there is no basis for that here—Plaintiff has never tried to raise the arguments the Court considers waived.  The Court mentions waiver only to explain the scope of the arguments it addresses below.

### a.  Defendants Have Justified the Challenged Withholdings from the Computer Forensic Reports

The first category of contested holdings comprises two forms of the same "computer forensic[ ] reports."  Defendants say they withheld some of that material because it contains "sexually explicit material," including child pornography.  ECF No. 53-2 at 30.  They asserted three FOIA exemptions to justify withholding this material: Exemption 3, Exemption 6, and Exemption 7(C).  *See id.* at 30–32.

Defendants' affidavits provide more detail.  As the HSI case agent explains, he located "DVDs containing computer forensic reports, excel spreadsheets, computer forensic reports converted to paper form and word documents containing [sexually] explicit material."  ECF No. 53-3 ¶ 7.  At first, he did not send that material for processing because it contained sexually explicit material, which "[o]nly certain individuals . . . are authorized to review."  *See id*. ¶¶ 7–8.  Later, he found a "version of the forensic report DVD" from which "prohibited material had been segregated based on a line by line review."  *See id.* ¶ 11.  He sent only that material to the applicable FOIA office for processing.  *Id.*

Plaintiff contests that withholding.  *See* ECF No. 55 at 2–3, 5–6.  He acknowledges that FOIA does not require disclosure of child pornography, but he says such material constituted a very small part of the files on his computer.  *See id.* at 5–6.  The legal, adult pornography, he believes, should have been disclosed.  *See id.* at 2–3.  He also thinks that, in any event, much more *non*-sexually explicit material that was on his computer must have been on the DVDs and thus should have been segregated from the sexually explicit material and produced.  *See id.* at 5–6.

### i.  Defendants Properly Invoked Exemption 7(C)

To justify withholding the adult pornography, Defendants assert two related exemptions: Exemptions 6 and 7(C).  The former applies to "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The latter applies to "records or information compiled for law enforcement purposes . . . to the extent [its] production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7). Both protect similar interests, but Exemption 7(C) establishes a "somewhat broader" carve-out than does Exemption 6. *See McCutchen v. HHS*, 30 F.3d 183, 184–85 (D.C. Cir. 1994) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989)). So if Exemption 7(C) applies, courts need consider only its wider scope. *See, e.g.*, *Am. Civil Liberties Union v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011).

Disclosing even adult pornography, Defendants say, "would reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C). *See* ECF No. 53-2 at 32. They also claim associating those individuals publicly with "law enforcement investigations" by releasing the images in the context of "records compiled for law enforcement purposes" would risk stigmatizing the third parties, an interest protected by the same exemption. *See id.*

Plaintiff disagrees. He asks the Court to "[c]onsider the high likelihood that all of this material was commercially produced." ECF No. 55 at 2. He assures the Court he did not have material recorded without the subject's consent. *Id.* Because of that supposed consent and public disclosure, he argues, the subjects depicted in the material have no cognizable privacy interests that could prevent disclosure. *See id.* at 2–3. He also contends that a mere association with law enforcement is not the sort of harm courts have previously recognized as potentially stigmatizing. *See id.* at 3. No subject depicted is, after all, an "agent, cooperator, target, or witness in the underlying criminal case." *Id.*

The Court has no trouble concluding that Exemption 7(C) applies here. For starters, the threshold requirement—"compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7)—is

easily satisfied.  As the HSI case agent explained, "the only documents that were identified as pertaining to Plaintiff concerned documents related to the investigation of the matter for which Plaintiff was prosecuted."  ECF No. 53-3 ¶ 6.  And a document is "compiled for law enforcement purposes" if "it was created as part of the government's investigation and criminal prosecution." *Boyd v. Exec. Office of U.S. Att'ys*, 161 F. Supp. 3d 1, 10 (D.D.C. 2015).  Thus, the forensic report, the source of the withheld pornography, was compiled for law-enforcement purposes because HSI created it as part of its investigation and DOJ's prosecution of Plaintiff for possessing and distributing child pornography.  Plaintiff does not contest that this threshold requirement is met.

The question, then, is whether producing the records "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  To answer that question, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *See Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Start with the privacy interests implicated.  No doubt, sexually explicit images implicate privacy interests.  For one thing, the "general rule" is that *any* "third-party identifying information contained in [law-enforcement] records is categorically exempt from disclosure."  *See Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 38 (D.D.C. 2013).  Thus, record custodians should withhold "names, addresses, *or other identifiers* of individuals mentioned in investigatory files." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (emphasis added).  Such other identifiers, of course, include photographs and videos.  *See Showing Animals Respect & Kindness v. U.S. Dep't of the Interior*, 730 F. Supp. 2d 180, 197 (D.D.C. 2010).  And few if any types of identifiers implicate personal privacy more than those at issue here.  On this record, this

alone counts as a significant privacy interest.[4]

Even apart from the subjects' privacy interests in the images themselves, the Court disagrees with Plaintiff that there is no risk of stigma from association with law enforcement. True, as he says, there is no reason to think the withholdings depict persons directly involved in his case or the supporting the investigation. *See* ECF No. 55 at 3. The Circuit, however, has recognized a much broader "primary purpose of Exemption 7(C)"—protecting individuals' interests in "not being associated unwarrantedly with alleged criminal activity." *See Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984). Although that interest is often discussed in the context of direct participants in criminal proceedings, the Court has no reason to think it is confined to such individuals.[5] And for those depicted in sexually explicit material found on Plaintiff's computer—a state over which they had imperfect (or likely no) control—there is an obvious potential unwarranted association with criminal activity: Their images were found in a collection that contained child pornography too. For these reasons, the Court agrees with Defendants that disclosure could create a "stigmatizing connotation" for affected individuals. *See* ECF No. 53-2 at 30. Thus, the Court can "reasonably . . . expect[ ]" disclosure to invade their privacy interests. *See* 5 U.S.C. § 552(b)(7)(C).

Plaintiff attempts to defeat that inference with the public-domain doctrine. He cites, for example, *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999). ECF No. 60 at 4. There, the Circuit

---

[4] Plaintiff raises the possibility that the pornographic images were commercially produced, which the Court addresses below in the context of his invocation of the public-domain doctrine. If that were so, and if the images were produced for dissemination with the knowing and voluntary consent of the persons depicted, perhaps all of that would erode the privacy interests at stake. But the Court has no basis to so conclude.

[5] *Cf. SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("[U]nless access to the names and addresses of private individuals in files within the ambit of Exemption 7(C) is necessary . . . to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure.").

recognized that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone*, 193 F.3d at 554. But to invoke that doctrine, Plaintiff has the burden to show "there is a permanent public record of the *exact portions* [of the records] he wishes to obtain." *See People for the Ethical Treatment of Animals v. HHS*, 901 F.3d 343, 352 (D.C. Cir. 2018) (quotation omitted); *Callaway v. U.S. Dep't of the Treasury*, No. 04-CV-1506 RWR, 2007 WL 7698581, at *12 (D.D.C. Aug. 31, 2007) (applying that principle to Exemption 7(C)). That is, before the Court can apply the public-domain doctrine, it must "scrutinize whether the plaintiff has proven that the information sought is in the public domain." *Jud. Watch, Inc. v. HHS*, 525 F. Supp. 3d 90, 104 (D.D.C. 2021).

Plaintiff has not come close to proving that. His argument rests an unsupported assumption: "the high likelihood that all of this material was commercially produced." ECF No. 55 at 2. But his supposition just doesn't cut it. Plaintiff does not even assert, much less meet his burden to prove, that the material existed *anywhere* other than his own computer, let alone that there is a permanent record of it in the public domain.[6]

For these reasons, disclosure of this material would implicate third-parties' privacy interests. All that remains is to balance that intrusion against any public interest in disclosure.

The Court cannot conceive of any such public interest. The public interest is served by information that enlightens the public about "what the Government is up to." *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 780. But disclosure of third-party information is disfavored "when the requester asserts a public interest—however it might be styled—in obtaining

---

[6] Even if Plaintiff had met his burden on this point, his argument about the images themselves does not address the second impact on privacy interests at stake: potential publicization of the fact that the images were found in a collection that contained child pornography. There is no basis for thinking there is a permanent record of that fact in the public domain.

information that relates to a criminal prosecution." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011). That is so because a criminal defendant's interest in challenging his conviction does not count as a public interest under this exemption. *See, e.g.*, *Roth v. DOJ*, 642 F.3d 1161, 1177 (D.C. Cir. 2011) (Despite a criminal defendant's "intense personal interest" in information about his case, his "personal stake in the release of the requested information is irrelevant to the balancing of public and third-party privacy interests required by Exemption 7(C)." (quotation omitted)).

The Court is at a loss to explain how disclosing sexually explicit images found on Plaintiff's computer would advance a public interest. Plaintiff says he wants the documents "because they are not supposed to be there." ECF No. 60 at 3. As best the Court can tell, he means the government was untruthful in prosecuting his criminal case because it asserted in that case that "no adult material was ever recovered from the computer forensics used in prosecuting him." *See id.* at 3–4. But whatever may have happened there, in litigating *this* case, the government publicly acknowledged that it found this material on his computer. *See* ECF No. 53-2 ¶ 27. The images themselves add nothing to the public interest. Thus, the Court agrees with Defendants that disclosing the records "serves no public benefit." ECF No. 53-2 at 32.

Without any public interest in disclosure, the balancing test is easy to apply. "*Any* amount of privacy expectation outweighs [a] . . . nonexistent public interest." *See Brown v. FBI*, 873 F. Supp. 2d 388, 403 (D.D.C. 2012). Thus, Defendants properly invoked Exemption 7(C) to withhold the images, and they are entitled to summary judgment in that respect.

### ii.    Defendants Reasonably Segregated Nonexempt Records

Plaintiff also argues that even if the sexually explicit images may be withheld from the forensic reports, the reports contained other material that should have been produced. *See* ECF No. 55 at 5–6. He says the reports should reflect the contents of devices that also contained "voluminous amounts of personal and business data," which he argues could have been segregated

from sexually explicit material and then produced. *See id.* at 6.

Indeed, Defendants did just that. As one of the DHS FOIA officers explained, the material that was withheld "in full" was the version of the forensic report that contains sexually explicit material. *See* ECF No. 53-2 ¶ 28. But she also processed a "clean" version of the same report, which resulted in 440 pages of production. *See id.* ¶¶ 29–30. As the HSI case agent described it, that clean version was created by "line by line review" that segregated sexually explicit material from other material. *See* ECF No. 53-3 ¶ 11. Thus, the records Plaintiff seeks with this argument have already been processed and produced, subject to other withholdings he does not challenge.

Insofar as Plaintiff claims that even more information should have been produced, he has not given the Court any basis to so conclude. As the Court explained above, Defendants have shown that this report contained exempt material, which it may withhold. Under those circumstances, the Court must presume they "complied with the obligation to disclose reasonably segregable material." *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (quotation omitted). To overcome that presumption, the requester must produce at least some evidence "that would warrant a belief by a reasonable person" that the agencies failed to segregate. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (quotation omitted). For that purpose, "unsubstantiated assertions" will not do. *Flyers Rts. Educ. Fund*, 71 F.4th at 1058.

Plaintiff offers only unsubstantiated—and vague—assertions. Defendants' witness swears that the processed version of the report was separated from the version containing exempt material by "line by line review." ECF No. 53-3 ¶ 11. That declaration suffices for the Court to find that the agency reasonably segregated nonexempt material. *See Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021). Against that declaration, Plaintiff "confidently assures" the Court that his devices contained data that was not produced to him as part of the forensic report. ECF No. 55 at 6.

But this assurance does not mention a single, concrete example of a missing file or explain why such a file would have been segregable. And even if the Court could conclude from this representation that his devices contained data that was not produced back to him, explanations for that disconnect abound. That data may have been part of a withholding that Plaintiff has not challenged. Or for whatever reason, the forensic report may not have captured all the data on each device. At bottom, Plaintiff's vague assertion does not give the Court reason to question the presumption to which Defendants are entitled through their declaration. Thus, the Court will grant summary judgment for Defendants on that claim.

> **b.     Defendants Have Justified Withholding the File Names**

What remains of the second category of contested material is a "list of file names of child pornography links and images," which have been redacted from material produced to Plaintiff. *See* ECF No. 58-1 ¶ 8. The redactions do not contain the images themselves—just the text of links to files stored elsewhere. *See id.* But a FOIA officer has sworn that "the links could be used to readily access such images from the internet by the simple act of typing these file names into a computer." *Id.* Thus, Defendants have again asserted that Exemptions 6 and 7(C) apply to protect the privacy interests of the subjects depicted in the images. *See* ECF No. 53-2 at 37–39.

Plaintiff contests those redactions on factual grounds. He thinks the declarant is mistaken that the links could be used to access child-sex-abuse material and "is willing to wager" the declarant has not verified this claim. ECF No. 60 at 2–3. He also points out that many purported links to material on the internet are "dead," meaning that the material has been deleted or is otherwise inaccessible. *See id.* at 3.[7] And he claims that, during his criminal trial, prosecutors never

---

[7] This claim is somewhat difficult to square with Plaintiff's assertion a few pages later that "everything . . . put on the Internet is there permanently." ECF No. 60 at 5.

mentioned having found any such links on his computer, and he does not "believe the prosecution simply overlooked such damaging evidence." *Id.* at 2.

The problem for Plaintiff is that the affidavit on which Defendants rely is detailed and nonconclusory on these points. And because of those qualities, it is "afforded a presumption of good faith, which the requester cannot rebut with purely speculative claims." *See Eddington*, 35 F.4th at 837 (quotation omitted). In any event, "[f]actual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary." *Jud. Watch, Inc. v. U.S. Dep't of State*, 235 F. Supp. 3d 310, 312 (D.D.C. 2017). Plaintiff's speculation is nothing of the sort, and it does not create a factual dispute on these points.

Given the risks of publicizing these links, the applicability of Exemption 7(C) is obvious. As explained above, information in law-enforcement records that identifies third parties is "categorically exempt from disclosure." *See Lazaridis*, 934 F. Supp. 2d at 38. Here, that rationale is especially strong because the subjects depicted are underage crime victims with a "cognizable privacy interest" in avoiding further distribution of the images and association with this case. *See Accurso v. FBI*, No. 19-CV-2540 (CKK), 2021 WL 411152, at *5 (D.D.C. Feb. 5, 2021) (collecting cases). Plaintiff acknowledges that interest. *See* ECF No. 60 at 2. There is also no public interest in further disseminating such material. So again, the Court must weigh serious intrusions on privacy against a "nonexistent public interest." *See Brown*, 873 F. Supp. 2d at 403. Thus, Defendants have shown that disclosure would "reasonably be expected to constitute an unwarranted invasion of personal privacy" under Exemption 7(C). ECF No. 53-2 at 38. And so they are entitled to summary judgment.

\*     \*     \*

For both sets of withholdings Plaintiff challenges, then, Defendants' *Vaughn* index and affidavits "show, with reasonable specificity, why the [requested] documents fall within the exemption." *See Evans*, 951 F.3d at 583. Accordingly, the Court will deny Plaintiff's cross-motion for summary judgment and grant Defendants' motion for summary judgment.

### 3.   The Court Will Not Conduct *in Camera* Review

Plaintiff asks the Court to review *in camera* the records for which he challenges Defendants' withholdings. ECF No. 55 at 6–7; ECF No. 60 at 6. But "it is not necessary for district courts to conduct an *in camera* inspection in every FOIA case." *Evans*, 951 F.3d at 588. Such inspections, in fact, "*should not* be resorted to as a matter of course." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (emphasis added). Thus, where custodial agencies have met their summary-judgment burden by affidavits, "*in camera* review is neither necessary nor appropriate." *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (quotation omitted). As the Court explained above, Defendants met their summary-judgment burden through detailed, specific affidavits that demonstrate (1) the applicability of Exemption 7(C) and (2) their reasonable segregation of non-exempt material. So the Court will not conduct *in camera* review.

### B.   Defendants are Entitled to Summary Judgment on Plaintiff's Other Claims

Plaintiff also asserts claims under the Privacy Act of 1974, 5 U.S.C. § 552a, and the APA, 5 U.S.C. § 701 *et seq*. *See* ECF No. 13 at 1. For the following reasons, Defendants are entitled to summary judgment on those claims.

The Privacy Act does not apply to the records Plaintiff seeks. That statute allows agencies whose "principal function . . . pertain[s] to the enforcement of criminal laws, including police efforts to . . . apprehend criminals, and the activities of prosecutors" to be exempt from mandatory disclosure. *See* 5 U.S.C. § 552a(j). Thus, systems containing "criminal case files" are exempt from disclosure under the Privacy Act. *See* 28 C.F.R. § 16.81(a)(4); *Corley v. DOJ*, 998 F.3d 981,

988 (D.C. Cir. 2021).  So the Court will grant summary judgment for Defendants insofar as Plaintiff's complaint asserts a Privacy Act claim.

Plaintiff's APA claim is impermissibly duplicative.  The APA applies to agency actions "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  So a plaintiff has no APA claim if another statute provides a "special, alternative remedy."  *See Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017).  That remedy need not be a perfect substitute for what the APA would provide—only "relief of the same genre" that does not create a "yawning [remedial] gap."  *See id.* at 1245–46 (quotation omitted).  Plaintiff's complaint appears to seek only the release of records.  *See* ECF No. 13 at 5.  That relief, of course, is the heartland of what FOIA offers.  But in any event, "FOIA 'imposes no limits on courts' equitable powers in enforcing its terms,'" so in general the "remedies available . . . under FOIA . . . provide the same relief . . . as would the APA."  *See Feinman v. FBI*, 713 F. Supp. 2d 70, 77 (D.D.C. 2010) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)).  Thus, Plaintiff has an adequate remedy elsewhere, precluding an APA claim.  And Defendants are entitled to summary judgment insofar as his complaint asserts such a claim.

## IV.    Conclusion

For all the above reasons, the Court will deny Plaintiff's Cross-Motion for Summary Judgment, and grant Defendants' Motion for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 30, 2023